# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 10-1383


**LAKE CHARLES MEDICAL & SURGICAL CLINIC, LLP**

**VERSUS**

**SHONDRA L. SMITH, M.D., ET AL.**


************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2005-4488
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

************

**PHYLLIS M. KEATY**
**JUDGE**

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, J. David Painter, James T. Genovese, and Phyllis M. Keaty, Judges.


**Thibodeaux, Chief Judge, dissents and assigns written reasons.**

**REVERSED AND REMANDED**.

**Leonard Knapp, Jr.**
**Attorney at Law**
**Post Office Box 1665**
**Lake Charles, Louisiana 70602**
**(337) 439-1700**
**Counsel for Plaintiff/Appellant:**
      **Lake Charles Medical & Surgical Clinic, LLP**

**Russell T. Tritico, Sr.**
**Attorney at Law**
**921 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 436-6648**
**Counsel for Defendant/Appellee:**
      **Shondra L. Smith, M.D.**

**W. Todd Fontenot**
**Fontenot & Fontenot Law Firm**
**523 Clarence Street**
**Lake Charles, Louisiana 70601**
**(337) 491-3864**
**Counsel for Defendant/Appellee:**
     **Cindi Reed**

**KEATY, Judge.**

This litigation arises out of an employment contract and partnership agreement between a physician and a medical clinic. The defendants, a partner-physician and the clinic's director of research, purposefully changed the terms of a research contract in advance of their leaving the clinic, resulting in the physician directly receiving a check for over $97,000 for research performed while she was employed by the clinic. The clinic filed suit against the defendants. At a hearing on cross motions for partial summary judgment, the trial court found in favor of defendants. This is an appeal by the clinic, suggesting that summary judgment was inappropriate. For the following reasons, we reverse the trial court and remand for further proceedings.

## ISSUE

The issue pertinent to our resolution of this matter is whether the trial court's grant of summary judgment in favor of each defendant was appropriate. To resolve that issue, we must determine whether or not each defendant met her burden in proving that no genuine issue of material fact exists.

## FACTS AND PROCEDURAL HISTORY

The Lake Charles Medical and Surgical Clinic, LLP, (the Clinic) is a multi-specialty group of doctors operating as a general partnership. Defendant, Shondra L. Smith, M.D. (Smith), was a partner at the Clinic and worked as a research dermatologist. She was recruited by defendant, Cindi Reed (Reed), the research director for the Clinic.

Prior to beginning work at the Clinic, Smith signed a physician agreement with the CEO of the Clinic.[1] The physician agreement is important because it contains

---

[1]The physician agreement referred to in this litigation is a copy provided by Dr. Smith. The Clinic's policy is to keep copies of all physician agreements in each physician's file; however, their

1

specific language allowing Smith to take with her any research projects and revenue earned after termination.

After working at the Clinic for a year, Smith became a partner in the Clinic. As a partner, she signed a partnership agreement and all amendments thereto during the course of her employment. The partnership agreement also contains language concerning revenue, expenses, duties of the partners, and termination. The crux of the dispute between the Clinic and Smith arises out of these two documents and differing opinions on how to interpret them.

In July 2004, Smith tendered her resignation, effective September 17, 2004. While employed by the Clinic, Smith worked on research for Genetech. Several times, she and Reed amended the contract with Genetech on behalf of the Clinic. Toward the end of Smith's employment with the Clinic, she and Reed made a final amendment to the Genetech contract, changing the address, payee, and tax ID from the Clinic to Smith. Whether the Clinic was informed that these changes were being made is disputed.

On September 21, 2004, Genetech issued a check as of September 8, 2004, to Smith in the amount of $97,544, representing final payment for work done from October 1, 2003 through September 8, 2004, while Smith was employed by the Clinic. Smith deposited the check and shared nearly forty thousand dollars with Reed as incentive for Reed to leave her position at the Clinic and begin working for Smith. The defendants assert that this was proper pursuant to Smith's physician agreement

---

copy of the agreement with Dr. Smith cannot be located. Although the former CEO recognized his signature on the physician agreement, he stated that the date was not written in his handwriting. He further stated that he remembered bringing Dr. Smith's contract to the board for approval, but he does not remember any negotiations taking place between he and Dr. Smith, particularly concerning the termination terms in the agreement.

2

with the Clinic and because the check was issued after Smith was no longer employed by the Clinic.[2]

The Clinic filed suit against Smith and Reed, claiming they breached their fiduciary duties to the Clinic, that they acted with the intent to defraud the Clinic, and that they owed the Clinic $97,544 plus judicial interest and legal fees.

At a hearing on cross partial motions for summary judgment,[3] the trial court found that the terms of the physician agreement concerning termination governed Smith particularly, while the partnership agreement only contained general provisions. It further found that because the contracts were drafted on forms prepared by the Clinic, they should be interpreted against the Clinic. The trial court then interpreted the relevant provision[4] of Smith's physician agreement as meaning that she was entitled to keep all money received after termination with the Clinic, regardless of when the work was performed, whether the Clinic had incurred any fees or expenses, and without incorporating any terms of the partnership agreement.[5] It

[2]Although the check was issued after Smith was no longer employed by the Clinic, it was payment for work done while Smith was employed by the Clinic.

[3]The Clinic's motion for partial summary judgment requested that Smith be ordered to return the monies of the Genetech check, totaling $97,544; that Smith's exception of prescription be denied; and that Smith's reconventional demand be limited to 2004. It should be noted that the parties stipulated on the issues of the exception and the reconventional demand, and those issues are not before us on appeal.

Smith and Reed filed a joint motion for partial summary judgment urging the trial court to revisit its earlier denial of their motion for summary judgment and to find, particularly, that Smith does not owe the Clinic $97,544 and that the Clinic's claims against Smith and Reed regarding the Genetech funds should be dismissed.

[4]The provision in the physician agreement states: "The Physician shall be entitled to all ongoing Dermatology research studies, which includes, but is not limited to all study documents, data, contracts, supplies and equipment, and all revenue received from these studies after effective date of termination."

[5]Also in the termination section of the physician agreement, and before the term concerning the Physician's right to keep all on-going studies and revenues received after termination, is the following term: "This Agreement may be terminated only in accordance with the termination provision of the Partnership Agreement."

found that Smith was entitled to the final Genetech check, that the Clinic was not entitled to reimbursement for expenses, and that Reed did not breach a fiduciary duty because the terms of the physician agreement concerning termination allowed her and Smith to change the terms of the Genetech contract. The Clinic appealed, seeking to have the judgment reversed and remanded for trial, asserting that as there were genuine issues of material fact, a grant of summary judgment was inappropriate.

## DISCUSSION

### *Summary Judgment*

Summary judgment is a procedural tool "designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). If the motion for summary judgment and supporting affidavits show that there is no genuine issue of material fact, the mover is entitled to a judgment as a matter of law. La.Code Civ.P. art. 966. "An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." *Evans v. Auto. Cas. Ins. Co.*, 94-129, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 389, 391, *writ denied*, 94-2732 (La. 1/6/95), 648 So.2d 930 (quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.1994), 639 So.2d 730). A "material fact" is one whose "existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Smith*, 639 So.2d at 751.

The mover bears the burden of proving that summary judgment is appropriate. *La. Pigment Co., L.P. v. Scott Constr. Co., Inc.*, 06-1026 (La.App. 3 Cir. 12/20/06), 945 So.2d 980. However,

4

the movant's burden on the motion does not require him to negate all of the essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more of the elements essential to the adverse party's claim.

*Id.* at 983 (quoting *Nguyen v. Underwriters at Lloyd's*, 05-1407 (La.App. 3 Cir. 5/3/06), 929 So.2d 821). If the adverse party "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact" and summary judgment is appropriate. *Meynard v. Pickett Indus., Inc.*, 04-887, p. 3-4 (La.App. 3 Cir. 12/15/04), 896 So.2d 126, 128.

"Appellate courts review summary judgments *de novo* and use the same criteria as the trial court in determining whether summary judgment is appropriate." *La. Pigment*, 945 So.2d at 983. In doing so, we "[view] the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant." *Advance Prods. & Sys., Inc. v. Simon*, 06-609, p. 4 (La.App. 3 Cir. 12/6/06), 944 So.2d 788, 791, *writ denied*, 07-26 (La. 3/9/07), 949 So.2d 444 (quoting *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764).

*Summary Judgment in favor of Cindi Reed*

At the hearing on the motions for partial summary judgment, evidence was not presented concerning Reed's alleged fiduciary duty owed to the Clinic. By virtue of an utter lack of evidence, we find that Reed did not meet her burden of proving that genuine issues of material fact do not exist with regard to the Clinic's claim against her. Therefore, the grant of summary judgment in favor of Reed is reversed.

*Summary Judgment in favor of Dr. Smith*

The trial court granted summary judgment in favor of Smith, finding that the terms of the physician agreement concerning termination are controlling in this litigation and that because there are two possible interpretations of the termination terms of the physician agreement, it must find in favor of Smith and against the Clinic since the agreement was drafted on their standard form.

That interpretation ignored altogether the incorporation of certain terms of the partnership agreement into the physician agreement, requiring that the two be read together. It also failed to take into consideration portions of the physician agreement concerning fee distribution for services rendered by the physician while employed by the Clinic. Finally, it failed to take into consideration the duties Smith owed to the Clinic as a partner.

After carefully reviewing the record, we do not find evidence that Smith met her burden in proving that material issues of fact do not exist concerning Smith's right to the Genetech check and her fiduciary duty to the Clinic. It is evident that there are outstanding questions of fact needing resolution, and we reverse the grant of summary judgment in favor of Smith and remand for further proceedings.

**DECREE**

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of defendants, Cindi Reed and Dr. Shondra Smith, and we remand this case to the trial court for further proceedings in accordance with this ruling.

Costs of this appeal are assessed to defendants, Dr. Shondra Smith and Cindi Reed.

**REVERSED AND REMANDED.**

6

LAKE CHARLES MEDICAL & SURGICAL CLINIC, LLP

VERSUS

SHONDRA L. SMITH, M.D., ET AL.


THIBODEAUX, Chief Judge, dissenting.


This is a very simple case. The majority errs when it unnecessarily complicates matters by suggesting the integration of the partnership and physician agreements.

Part IV of the Physician's Agreement deals with termination. That agreement provides in part that "[i]n addition, the Physician shall be entitled to all ongoing Dermatology research studies, which includes, but is not limited to all study documents, data, contracts, supplies and equipment, and *all revenue received* from these studies after effective date of termination." (Emphasis supplied). This agreement is explicit and straightforward. I do not see any genuine issues of material fact regarding the entitlement of the revenues received from these dermatology studies. Dr. Smith was in charge of these studies. Both former CEOs of the partnership admit that Dr. Smith is entitled to this research money. The partnership agreement does not contradict any of these facts.

The partnership agreement refers to "fees" from the practice of medicine and/or surgery. These "fees" shall accrue to the partnership. The $97,544.00 is not a "fee" from the practice of medicine and/or surgery as contemplated by the partnership agreement, even if the partnership agreement does apply. It is money

deriving from the research studies.

With regard to Ms. Reed, the former employee/research director at the medical partnership, the majority posits that "evidence was not presented concerning Reed's alleged fiduciary duty owed to the Clinic. By virtue of an utter lack of evidence, . . . Reed did not meet her burden of proving that genuine issues of material fact do not exist with regard to the Clinic's claim against her." The Clinic/medical partnership is the one alleging a breach of fiduciary duty. It is *its* duty to come forward with evidence concerning the alleged breach of fiduciary duty, not Ms. Reed's. Ms. Reed simply changed the payee's name on the research contract, allowing Dr. Smith to receive the proceeds to which she was entitled after she left the medical partnership. As I see it, the defendants are correct. Ms. Reed was doing simply what the contract allowed Dr. Smith to receive, that is, the proceeds from the research project.

There are no genuine issues of material fact. For the foregoing reasons, I dissent and would affirm the judgment by the trial court in favor of Dr. Smith and Ms. Reed.